IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Clarissa Riddle and Jason Riddle, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Case No. 18 CV 50284 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Adam Burt, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## REPORT AND RECOMMENDATION

For the reasons stated below, it is this Court's report and recommendation that Plaintiffs' amended motion for default judgment [104] be granted and that judgment be entered in favor of Plaintiff Clarissa Riddle and against Defendants Adam Burt and Anthony Yeager in the total amount of $350,000, consisting of $250,000 in compensatory damages for which Defendants Burt and Yeager will be held jointly and severally liable, and $100,000 in punitive damages for which Defendants Burt and Yeager will each be held individually liable for $50,000. The Court further recommends that judgment be entered in favor of Plaintiff Jason Riddle and against Defendants Burt and Yeager in the total amount of $45,000, consisting of $30,000 in compensatory damages for which Defendants Burt and Yeager will be held jointly and severally liable, and $15,000 in punitive damages for which Defendants Burt and Yeager will each be held individually liable for $7,500. Any objection to this report and recommendation must be filed by March 11, 2021. *See* Fed. R. Civ. P. 72(b). The failure to file a timely objection may result in the waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989). The Clerk is directed to mail a copy of this order to Defendants Burt and Yeager at the addresses listed in the certificate of service. *See* Dkt. 115.

### STATEMENT

#### I. Background

Before the Court is Plaintiffs Clarissa and Jason Riddle's amended motion for default judgment under Federal Rule of Civil Procedure 55(b)(2) against Defendants Adam Burt and Anthony Yeager. Dkt. 104.[1] Plaintiffs filed a second amended complaint in this case on March 18, 2019, seeking compensatory and punitive damages for claims arising out of an incident in which A-One Bail Bonds, LLC, Michael Oliver,[2] and Defendant Yeager caused bounty hunters

---

[1] Plaintiffs' original motion [96] was denied without prejudice on August 25, 2020. Dkt. 101.
[2] A-One Bail Bonds, LLC and Michael Oliver were previously dismissed from this case on August 1, 2019 pursuant to the parties' settlement agreement. Dkt. 66. Defendant Brynn Leigh Johnson was recently

Defendants Burt and Johnson to pursue and capture Plaintiff Clarissa Riddle in Illinois, even though bounty hunting is illegal in Illinois. Dkt. 47. Plaintiffs bring claims for false imprisonment, assault, battery, intentional infliction of emotional distress, and negligence. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Venue in this District is also proper under 18 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in DeKalb, Illinois.

Plaintiffs served Defendants Yeager and Burt with the second amended complaint on May 18, 2019 and March 18, 2019, respectively. Dkts. 58, 47-1. The Clerk of Court entered an order of default against Defendant Yeager on June 19, 2019, Dkt. 64, and Defendant Burt on February 27, 2020, Dkt. 85. Plaintiffs' counsel has averred that Defendants are not minors, incompetent, or in active military service.

On September 15, 2020, Plaintiffs filed an amended motion for default judgment against Defendants seeking $1,075,000 in damages. Plaintiffs mailed a copy of the motion to Defendants by regular and certified mail on the same day, which was more than seven days before the presentment of the motion on October 29, 2020. *See* Fed. R. Civ. P. 55(b)(2). Copies of the return receipts evidencing delivery have been filed on the docket. Dkts. 106-107. The Court held a hearing on Plaintiffs' motion on October 29, 2020 and a prove-up hearing on December 2, 2020. Defendants received notice of both hearings but failed to appear. To date, Defendants have not responded to Plaintiffs' motion.

## II. Liability

By reason of default, Defendants Yeager and Burt have admitted the truth of the allegations in Plaintiffs' second amended complaint relating to liability. *See Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). However, it remains for the Court to determine whether the unchallenged facts constitute a legitimate cause of action. *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); 10A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2688 (4th ed. 2020).

As alleged in the second amended complaint, Defendant Yeager was doing business as Fugitive Recovery Operations Group, an organization of bounty hunters. Defendant Yeager employed and otherwise authorized and directed Defendants Burt and Johnson to pursue and capture Plaintiff Clarissa Riddle in Illinois, even though bounty hunting is illegal in Illinois. Dkt. 47. On July 13, 2018, Defendants Burt and Johnson, acting on their own accord and on behalf of Yeager, lured Plaintiff Clarissa Riddle to a gas station in DeKalb, Illinois with the false pretense of purchasing items that Plaintiff was selling. When Plaintiffs arrived at the gas station, Defendant Burt approached Plaintiff Clarissa Riddle at gun point, bound her hands with handcuffs, and forced her into a vehicle with Defendants Burt and Johnson. When Plaintiff Jason Riddle attempted to help his wife Clarissa, Defendant Burt held him at bay with the threat of deadly force by holding his hand on his handgun and threatening Plaintiff Jason Riddle to not pursue them or contact the police. Plaintiff Jason Riddle obeyed Burt because he feared for his life and the life of his wife. Once Defendant Burt drove away from the gas station, Plaintiff Jason Riddle attempted to follow

---

dismissed on December 30, 2020. Dkt. 122. Accordingly, this Court will address Plaintiff's motion only as it relates to Defendants Burt and Yeager.

their vehicle. Defendant Burt quickly lost Plaintiff Jason Riddle as he drove erratically to avoid being followed. Plaintiff Clarissa Riddle remained shackled as she was transported against her will and under threat of force by Defendants Burt and Johnson to Mississippi for an outstanding traffic ticket.

Taking the well-pleaded factual allegations in the complaint as true, Plaintiffs allege a sufficient basis to support their claims against Defendants, with Defendant Yeager liable as Defendant Burt's employer under a theory of *respondeat superior*. *See Slabon v. Sanchez*, No. 15-CV-08965, 2020 WL 5763760, at *28 (N.D. Ill. Sept. 28, 2020); *Gaines v. Chicago Bd. of Educ.*, No. 19 C 775, 2020 WL 1182767, at *4 (N.D. Ill. Mar. 12, 2020) ("Under Illinois *respondeat superior* law, an employer may be liable for the negligent, willful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer.") (internal quotation marks and citation omitted). "To state a claim for false imprisonment under Illinois law, the plaintiff must allege that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint." *Slabon*, 2020 WL 5763760, at *29 (internal quotation marks and citation omitted). "Although actual force is unnecessary to establish a false imprisonment claim and may be accomplished by words alone, the alleged submission must nonetheless be to a threatened and reasonably apprehended force." *White v. Wal-Mart Stores, Inc.*, 2019 IL App (1st) 163238-U, ¶ 47 (internal quotations marks and citation omitted). Despite bounty hunting being illegal in Illinois, Defendant Burt restrained Plaintiff Clarissa Riddle against her will. Defendant Burt also restrained Plaintiff Jason Burt from helping his wife when he threatened him with deadly force.

"A person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1. A battery occurs when someone "knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3. Here, Defendant Burt threatened Plaintiff Jason Riddle with bodily harm if he attempted to help his wife. He also intentionally and without legal justification grabbed Plaintiff Clarissa Riddle by the arm, handcuffed her, and forced her into his vehicle.

To state a claim for intentional infliction of emotional distress: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Defendant Burt's conduct in luring Plaintiff Clarissa Riddle under false pretenses and forcibly taking her to Mississippi for a traffic violation was extreme and outrageous. Defendant Burt knew Plaintiff was more susceptible to emotional distress, having given birth only four days earlier, and that his actions were more likely to cause such distress. In light of Defendant Burt's outrageous conduct in detaining Plaintiff Clarissa Riddle, Plaintiffs have sufficiently alleged that such conduct caused them severe emotional distress. *See id.* at 496 ("[S]evere distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.").

3

The essential elements of common law negligence are: (1) the existence of a duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) an injury caused by that breach. *Clifford v. Wharton Business Group, L.L.C.*, 817 N.E.2d 1207, 1212 (Ill. App. Ct. 1st Dist. 2004). "[E]very person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012). "Thus, if a course of action creates a foreseeable risk of injury, the individual engaged in that course of action has a duty to protect others from such injury." *Id.*

Here, Plaintiffs' injuries were reasonably probable and foreseeable based on Defendants' conduct. They decided to forcibly capture Plaintiff Clarissa Riddle even though doing so is illegal in Illinois.[3] *Lund v. Seneca Cty. Sheriff's Dep't*, 230 F.3d 196, 198 (6th Cir. 2000) ("The bondsman may be authorized under the law of the state where a bond is made to retrieve bail jumpers, but he must abide by the law of the state he enters to pursue his fugitive."). Defendants owed Plaintiffs a duty of reasonable care to not wrongfully restrain them. Defendants breached that duty and caused Plaintiffs emotional distress.

### III. Damages

With liability established, the Court will now address Plaintiffs' request for damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Furthermore, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "A court has discretion to determine the amount of damages to be awarded pursuant to the default judgment." *Smerling v. Dever*, No. 12 CV 50362, 2015 WL 75016, at *3 (N.D. Ill. Jan. 6, 2015). "Under Illinois law, the evidence need only tend to show a basis for the computation of damages with a fair degree of probability." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611 (7th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiffs' second amended complaint demanded compensatory damages in excess of $75,000 plus punitive damages because Defendants deprived them of their liberty and freedom, and they suffered physical and emotional pain and suffering and other economic and non-economic damages as a result of their conduct. Plaintiff Clarissa Riddle now seeks judgment in her favor and against Defendants Yeager and Burt for $1,000,000 in compensatory and punitive damages. Plaintiff Jason Riddle also seeks judgment against Defendants for $75,000 in compensatory and

---

[3] 725 ILCS 5/103-9 provides:

> No bail bondsman from any state may seize or transport unwillingly any person found in this State who is allegedly in violation of a bail bond posted in some other state. The return of any such person to another state may be accomplished only as provided by the laws of this State. Any bail bondsman who violates this Section is fully subject to the criminal and civil penalties provided by the laws of this State for his actions.

4

punitive damages.[4] Both Plaintiffs submitted affidavits in support of their requested damages. Dkt. 104 at 13-19; Dkt. 116. In addition to the affidavits submitted with their motion, this Court also heard testimony from Plaintiffs on December 2, 2020.

At the damages hearing, both Plaintiffs detailed the severe emotional injury and personal harm that each suffered as a result of Defendants' conduct. At the hearing, this Court had the opportunity to evaluate Plaintiffs' demeanor and overall credibility. Plaintiff Clarissa Riddle was tearful in recounting the traumatic and emotional events giving rise to her claims and provided detailed testimony of the incident and the resulting harm. Both Plaintiffs testified consistently with each other and with the events outlined in their affidavits. Given Plaintiffs' demeanor, the consistency in their testimony, and the detailed nature of their testimony, this Court finds Plaintiffs' testimony credible. Accordingly, Plaintiffs have recounted the events as follows.

On July 9, 2018, Plaintiff Clarissa Riddle gave birth to her son. On July 13, 2018, she was contacted by a buyer on Facebook Marketplace interested in purchasing items she was selling. Plaintiffs drove to a gas station with their newborn son in their vehicle to meet the buyer. As Plaintiff Jason Riddle went into the gas station, Defendant Burt approached Plaintiffs' vehicle openly carrying a handgun. Defendant Burt opened Plaintiff Clarissa Riddle's passenger door, pointed the handgun at her, and yelled at her to get out of the car. Defendant Burt grabbed Plaintiff Clarissa Riddle by the arm and pulled her toward his vehicle. He then forced her hands behind her back, put her wrists in handcuffs, and forcibly pushed her into the vehicle. Plaintiff Jason Riddle yelled at Defendants to stop. With his hand on his handgun, Defendant Burt yelled at Plaintiff Jason Riddle not to call the police or follow them. Plaintiff Jason Riddle wanted to intervene but feared for his life. Defendant Burt drove the vehicle away from the gas station in an aggressive and erratic manner, noting that they were being trailed and needed to get out of Illinois. Defendant Burt drove the wrong way down a one-way street, drove at a high rate of speed, passed two vehicles on a regular two-way street, and went through at least two stoplights before getting on the interstate.

Plaintiff Clarissa Riddle repeatedly asked where they were taking her, but Defendants did not respond or otherwise identify themselves. Both Plaintiffs believed Plaintiff Clarissa Riddle had been kidnapped, and they feared for her life. Plaintiff Clarissa Riddle was restrained against her will and unable to exit the vehicle. It was not until two hours after abducting Plaintiff Clarissa Riddle that Defendants identified themselves as bounty hunters and advised Plaintiff that she had a warrant out for her arrest in Hernando County, Mississippi. They would not let Plaintiff see the warrant and refused her a bathroom break until they arrived in St. Louis. During the drive, Defendants Burt and Johnson celebrated their capture of Plaintiff by high fiving each other and taunting her, saying she was trying to run and hide in Illinois. Defendants then spoke with someone at Defendant Yeager's bounty hunting company by telephone and were asked to provide proof that they had Plaintiff Clarissa Riddle in custody. Defendants then took a photo of Plaintiff handcuffed in their backseat and posted it to their company's Facebook page. Dkt. 116.

When Plaintiff Jason Riddle returned home from the gas station with his infant son, he called 9-1-1 to report the kidnapping. Police officers arrived at Plaintiffs' home, and Plaintiff Jason

---

[4] Although Plaintiffs Clarissa Riddle and Jason Riddle seek awards of $1,000,000 and $75,000, they make no distinction between compensatory and punitive damages.

Riddle consented to a search of his home and vehicle. The police officers then asked Plaintiff to come to the police station for an interview, where Plaintiff was questioned for approximately four hours. The police officers told Plaintiff that his story did not add up and told Plaintiff to come clean about Plaintiff Clarissa Riddle's location. The police officers eventually determined that Plaintiff Clarissa Riddle had an outstanding warrant, and they contacted Defendants through their bounty hunting company.

Approximately three hours after abducting Plaintiff Clarissa Riddle, Defendants answered a telephone call from local detectives investigating her abduction. Defendants told the detectives that Plaintiff had voluntarily surrendered. Plaintiff shouted her disagreement, and the detectives asked to speak with her. She told the detectives that she had been taken against her will, but that she understood she had a warrant in Mississippi. The detectives told Defendants that they may need to turn around and bring Plaintiff back. Defendants refused. The detectives told Defendants to remain available for further questioning.

Plaintiff Clarissa Riddle remained handcuffed behind her back for approximately four hours until Defendants stopped at a gas station in St. Louis. Defendant Johnson refused to remove or cover up Plaintiff's handcuffs before escorting her to the gas station restroom, which embarrassed Plaintiff. Defendant Johnson accompanied Plaintiff into the stall while she used the restroom. Defendant Johnson reapplied Plaintiff Clarissa Riddle's handcuffs in the front for the remainder of the trip.

During the nine-hour drive to Mississippi, Defendants commented on the police efforts to locate Plaintiff and the news reports and social medical recounting the story, noting that they were famous. Multiple police agencies were investigating Plaintiff Clarissa Riddle's abduction. Defendants laughed about the chaos they had caused. Defendant Johnson read aloud the negative comments about Plaintiff and her family that were posted in response to their Facebook post and on the DeKalb Daily Chronicle's Facebook page. Defendants continued to taunt Plaintiff, stating that luckily, she was not really kidnapped because the police were not very good at finding her. Defendants then asked Plaintiff when she was released from the hospital because they had been waiting for her the night of July 11, 2018.

Having given birth on July 9, 2018, Plaintiff Clarissa Riddle received stitches after suffering from vaginal tearing. Accordingly, during the trip to Mississippi Plaintiff Clarissa Riddle experienced pain, vaginal bleeding, and her breasts were engorged and painful from lactating. Plaintiff was not provided sanitary pads or other necessities for maintaining proper care and hygiene. Plaintiff was also deprived of nursing her newborn son and was not provided nursing pads or breast pump supplies for her engorged breasts. Plaintiff Clarissa Riddle was emotionally distraught and crying for most of the trip. Plaintiffs also had to reschedule their son's well child doctor's visit.

When Plaintiff was booked into the Hernando County, Jail in Mississippi pending a court appearance, she discovered that the warrant was related to a traffic ticket from 2015 for driving on a suspended license and subsequent contempt of court charges for failing to appear in court. On July 18, 2018, Plaintiff was released from custody for time served and a fine. Plaintiff purchased

a bus ticket back to Illinois and arrived home on July 19, 2018. On November 3, 2018, Plaintiffs' son passed away after experiencing a medical emergency related to respiratory syncytial virus.

As a result of Defendants' actions, Plaintiffs suffered extreme emotional distress. Initially, neither Plaintiff Clarissa Riddle nor her husband knew that she was abducted by bounty hunters or that she had an outstanding warrant. Plaintiff Clarissa Riddle feared for her life and believed she would never see her family again. Plaintiff Clarissa Riddle continues to experience nightmares related to the abduction and being held at gunpoint and has had to frequently relive the incident because the events were shared in the local news and on social media. She remains hesitant to go out in public and always locks her doors when anyone approaches her vehicle. Plaintiff testified that she talked to a therapist about the incident. Plaintiff Clarissa Riddle also suffers from extreme emotional distress and grief relating to the time in which she was deprived of critical bonding with her newborn son. Plaintiff's grief was further exacerbated after her son's passing and realizing that she had missed significant time with him during his life.

Plaintiff Jason Riddle similarly felt extreme distress, grief, and guilt over whether he could have acted more quickly to intervene and prevent the harm to his wife. Plaintiff wanted to intervene in what he believed to be his wife's kidnapping, but he feared for his life. Plaintiff repeatedly experienced nightmares related to the incident. He was also distressed by the police interrogation following his wife's abduction. Even after the police officers spoke with Plaintiff Clarissa Riddle, they continued to accuse him of having his wife arrested for a reward.

Overall, Plaintiffs affidavits and testimony show that they suffered significant and ongoing emotional distress as a result of Defendants' reprehensible conduct. Despite the fact that bounty hunting is illegal in Illinois, Defendants captured Plaintiff Clarissa Riddle and tore her away from her family during a critical time in her newborn son's life and while she was still recovering from childbirth. Defendants' actions in capturing Plaintiff Clarissa Riddle led both Plaintiffs to believe that she was being kidnapped. It was hours after Plaintiff Clarissa Riddle's abduction before Plaintiffs determined that she was being apprehended for a traffic violation. This caused extreme distress to both Plaintiffs during the abduction and after, with Clarissa Riddle seeking mental health treatment with a therapist. She also greatly limited her communication with her friends and family to avoid discussing the incident and continues to fear for her safety. Although Plaintiffs have established evidence of their pain and suffering, the Court does not find an award in the amount they request proportionate to the distress they incurred.

Plaintiffs cite to *Davignon v. Clemmey*, 322 F.3d 1 (1st Cir. 2003) in support of their request for damages. In *Davignon*, the First Circuit affirmed a jury verdict of $2,850,000 in damages for assault, battery, intentional infliction of emotional distress, and various civil rights violations stemming from the defendants' abrupt discharge of the plaintiff, physical assault, threats against the plaintiff's life and the lives and physical safety of his family, and long and relentless campaign of harassment and intimidation. Although Plaintiffs lives here were similarly threatened without provocation, Defendants conduct in this case did not involve the same level of physical assault or a six-month campaign of harassment and intimidation that contributed to the high damage award in *Davignon*.

7

Although courts can rarely make direct comparisons to awards in other cases, especially those outside of Illinois, this Court finds the facts of *Milburn v. Vinson*, 850 So. 2d 1219 (Miss. Ct. App. 2002) more instructive than those in *Davignon*. *See Naeem*, 444 F.3d at 611. In *Milburn*, a Mississippi court of appeals upheld a jury award of $200,000 in compensatory damages and $100,000 in punitive damages arising from the invasion of the plaintiff's home by two bail bondsmen searching for her son. As a result of the incident, the eighty-three-year-old plaintiff suffered only emotional harm, namely trouble sleeping and eating, being afraid in her own home, unable to participate in activities such as walking outside. *Id.* at 1224. Nevertheless, the court found that harm sufficient to support an award of compensatory and punitive damages, noting that the armed bondsmen went to the plaintiff's home on Christmas Day, when she was alone, and after thoroughly searching the plaintiff's home and not finding her son, they threatened her son and threatened to come back to her home to find him if necessary.

Defendant Burt in this case was similarly armed when he forced Plaintiff Clarissa Riddle into his vehicle and threatened Plaintiff's husband. While the long-term emotional harm Plaintiff Clarissa Riddle suffered is similar to the harm suffered by the plaintiff in *Milburn*, the Court finds that Plaintiff Clarissa Riddle should be awarded additional compensatory damages, namely $250,000, because the emotional distress she suffered during the abduction was compounded by the situation with her infant son and the length of her nine-hour detention when compared to the shorter duration of defendants' in *Milburn* who left the plaintiff's home after thoroughly searching it. The Court also finds that Plaintiff Jason Riddle should be awarded $30,000 in compensatory damages because although he was not himself abducted and detained for nine hours, he witnessed his wife being kidnapped, feared for hours that his wife may not return, and was threatened with deadly force. Accordingly, the Court finds that such an award fairly compensates Plaintiff for his emotional distress. *See Turner v. Carothers*, No. 83 C 1166, 1985 WL 2549, at *1 (N.D. Ill. Sept. 16, 1985) (awarding $10,000 for emotional distress where the plaintiff observed the defendants harassment, threats, and physical attack in the presence of his daughter, saw the defendants surround and harass his fellow worker, and experienced fear for his life when a defendant drew a gun and pointed it at him). Based on the evidence provided in this case and in the exercise of its discretion, this Court recommends an award of $250,000 in compensatory damages to Plaintiff Clarissa Riddle and $30,000 in compensatory damages to Plaintiff Jason Riddle.[5]

Plaintiffs also seek punitive damages against Defendants on their claims. "[P]unitive damages based on a default judgment appear to be the exception rather than the rule in the Seventh Circuit." *Dvore v. Casmay*, No. 06-CV-3076, 2009 WL 211856, at *6 (N.D. Ill. Jan. 29, 2009)

---

[5] Two defendants, A-One Bail Bonds, LLC and Michael Oliver, were previously dismissed from this case pursuant to their settlement with Plaintiffs. Dkt. 66. This Court expresses no opinion as to whether Defendants Yeager and Burt would be entitled to reduce any damage award by this settlement amount because the amount and terms of that settlement were not provided to the Court. *See* 740 ILCS 100/2(c) (stating that a good-faith settlement "reduces the recovery on any claim against [the nonsettling parties] to the extent of any amount stated in the [settlement], or in the amount of the consideration actually paid for it, whichever is greater"); *Patton v. Carbondale Clinic, S.C.*, 641 N.E.2d 427, 432 (Ill. 1994) ("In order to determine whether defendant is entitled to any setoff, we must look to the settlement agreements and determine what plaintiff recovered in each."); *Thornton v. Garcini*, 928 N.E.2d 804, 812 (Ill. 2010) (finding that a defendant's request for a setoff to reduce a damage award to reflect amounts already paid by settling defendants constitutes an "enforcement action" which may be raised at any time).

(citing *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990)). Accordingly, "[p]unitive damages should only be awarded where they serve the twin purposes of condign punishment and deterrence." *Brady v. Wade*, No. 06 C 2760, 2008 WL 2323791, at *3 (N.D. Ill. June 2, 2008). After careful consideration of Defendants' willful and malicious conduct, this Court finds punitive damages are necessary to serve both goals of punishment and deterrence. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).

"As a federal court sitting in diversity, we look to the law of Illinois to determine the appropriateness of punitive damages." *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 946 (7th Cir. 2002). While punitive damages are not favored under Illinois law, they may be awarded where "torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Id.* (internal quotation marks and citation omitted). In determining the appropriate amount of punitive damages to award Plaintiffs, Illinois Pattern Jury Instruction, Civil, No. 35.01 provides that the jury should consider three factors, with the first being the most important: (1) the degree of reprehensibility of the defendant's conduct; (2) the actual and potential harm the defendant's conduct caused to the plaintiff; and (3) the amount of money necessary to punish the defendant and discourage the defendant and others from future wrongful conduct. *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (finding the degree of reprehensibility to be the most significant factor in determining whether to award punitive damages).

This Court finds the reprehensibility of Defendants' conduct supports a substantial punitive damage award. Defendants' conduct was intentionally malicious and outrageous and done with complete indifference to Plaintiffs' safety and rights. After unsuccessfully capturing Plaintiff Clarissa Riddle at the hospital two days after giving birth, Defendant Burt, under the direction of Defendant Yeager, intentionally lured Plaintiff Clarissa Riddle under false pretenses and forcibly removed and kept her from her family, including her newborn son, without any regard for her wellbeing or the wellbeing of her family. It was not until two hours into Plaintiff Clarissa Riddle's capture that Defendants first told her she was being brought to Mississippi for an outstanding warrant. Defendants were also undeterred by authorities telling them to return Plaintiff to Illinois. An award of compensatory damages alone is not enough to deter Defendants or anyone else from committing similar conduct in the future.

In determining the amount of the award, the Supreme Court has cautioned that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. "In our estimation, the best way to determine whether a given ratio is appropriate is to compare it to punitive damages awards in other, similar cases." *Int'l Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 487, 870 N.E.2d 303, 322-23 (2006).

The Court finds *Milburn* instructive because the court awarded $100,000 in punitive damages to punish and deter similar conduct by two bounty hunters that resulted in similar harm to Plaintiffs. By comparison, in a case where the emotional distress to the plaintiff was not as extensive and the defendant's conduct was not as calculated, an Illinois court upheld the remittitur of a punitive damage award for $81,600, equal to the amount in compensatory damages for

9

emotional distress, where the defendant made defamatory statements about the plaintiff's job performance only once and there was no evidence of a premeditated scheme. *See Slovinski v. Elliot*, 927 N.E.2d 1221, 1228-29 (Ill. 2010) ("Defendant's conduct [is] on the low end of the scale for punitive damages, far below those cases involving a defendant's deliberate attempt to harm another person."). By contrast here, Defendants had a premeditated scheme to intentionally lure Plaintiff under false pretenses, which resulted in severe emotional harm to both Plaintiffs. Based upon the facts and circumstances of Defendants' conduct, the harm to each Plaintiff, and considering the compensatory damage award recommended for each Plaintiff, this Court recommends an award of $100,000 in punitive damages to Plaintiff Clarissa Riddle and $15,000 in punitive damages to Plaintiff Jason Riddle.

Accordingly, this Court recommends that judgment be entered in favor of Plaintiff Clarissa Riddle and against Defendants Adam Burt and Anthony Yeager in the total amount of $350,000, consisting of $250,000 in compensatory damages for which Defendants Burt and Yeager will be held jointly and severally liable, and $100,000 in punitive damages for which Defendants Burt and Yeager will each be held individually liable for $50,000. The Court further recommends that judgment be entered in favor of Plaintiff Jason Riddle and against Defendants Burt and Yeager in the total amount of $45,000, consisting of $30,000 in compensatory damages for which Defendants Burt and Yeager will be held jointly and severally liable, and $15,000 in punitive damages for which Defendants Burt and Yeager will each be held individually liable for $7,500.[6]

Date: February 25, 2021　　　　　　　　By:　*Lisa A. [signature]*
　　　　　　　　　　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[6] *See Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) ("Although the principle of joint and several liability prevents Minix from recovering duplicative compensatory damages, it does not affect the defendants' individual liability for punitive damages, which are assessed separately against each defendant.") (citing *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir.1987).